**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| **K. GLENDA CAMERON,** | |
|               **Plaintiff,** | 2001-CV-0073 |
|   v. | |
| **BRENDA MILLER,** | |
|               **Defendant.** | |

**TO:**    K. Glenda Cameron, Esq.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came before the Court for bench trial on February 21, 2007. The record reflects that Defendant never appeared in this matter and entry of default was entered against her on or about August 20, 2002. Plaintiff consented to trial by the undersigned, and a bench trial was held February 21, 2007, to determine damages. Plaintiff finally submitted her proposed findings of fact and conclusions of law (Docket No. 74) on April 14, 2009.

Having reviewed Plaintiff's submission and all of the evidence before it, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 2

## **Findings of Fact**

1. On or about June 3, 1997, Plaintiff K. Glenda Cameron (Plaintiff) entered into an agreement with Defendant Brenda Miller (Defendant) to purchase Plot #65 Estate Hope & Carton Hill (hereinafter "the property") for $140,000. *See* **Exhibit 1**,[1] Offer to Purchase Agreement (hereinafter "the agreement"), dated June 3, 1997; *see also* **Exhibit 3**, Transcript of bench trial, at 12.

2. At the time, Plot #65 consisted of a two-bedroom, two-bath home on approximately 0.686 acres. *See* **Exhibit 4**, Warranty Deed; *see also* **Exhibit 3** at 29. The home was a wood frame structure on a concrete foundation with a large wraparound porch (hereinafter "the home" or "the original structure"). **Exhibit 3** at 23. It was a two-story structure with the main home and bedrooms upstairs and an additional area downstairs that could be used as a third bedroom or for storage. *Id*. at 29. The home was newly painted at the time of Plaintiff's purchase. *Id*. at 15.

3. The agreement required Defendant to provide Plaintiff with a wood infestation report from a properly licensed pest control company stating that:

> the improvements have been inspected and are **free from visible infestation and structural damages caused by termites** and other wood destroying

---

1. All exhibits and exhibit numbers refer to the exhibits as numbered and filed by Plaintiff with her proposed findings of facts and conclusions of law (Docket No. 74).

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 3

>organisms, or that if such infestation or structural damage or both exist, it has been corrected.

**Exhibit 1** at para. 8 (emphasis added). The agreement required the wood infestation report to be made within thirty (30) days of the closing. *Id*. The sales agreement allowed Plaintiff to terminate the sales agreement and seek reimbursement of the earnest money deposit if Defendant failed to provide the wood inspection report or failed to make any necessary repairs outlined in the wood inspection report. *Id*.

    4.    The sales agreement also contained a clause stating:

>Seller represents and **warrants to Buyer that Seller has disclosed to Buyer any hidden defects of which Seller has knowledge** and which could not be discovered in the normal course of inspection by a knowledgeable person.

**Exhibit 1** at para. 11 (emphasis added).

    5.    At closing, Defendant provided Plaintiff with an inspection report stating that "**No Visible** evidence of wood-destroying insect infestation was observed." **Exhibit 7**, Wood Inspection Report; *see also* **Exhibit 3** at 13. The report lists the Seller as "Brenda Miller" and the date of inspection as May 15, 1997. **Exhibit 7**.

    6.    The parties actually closed on July 24, 1997. *See* **Exhibit 2**.

    7.    Approximately two and half (2 1/2) years after purchasing the property, Plaintiff hired a painter to repaint the home. **Exhibit 3** at 14.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 4

    8.    The painter noticed termite damage as he began stripping the walls to begin painting and informed Plaintiff of the same. *Id*.

    9.    Shortly thereafter Plaintiff contacted her neighbor Robert Quinn (Quinn) to discuss the repainting and other potential modifications to the home. *Id*. Robert Quinn is a General Contractor and has been licensed to do business in the Virgin Islands for almost twenty (20) years. *See* **Exhibit 8**, Deposition of Robert Quinn, at 3.

    10.    Quinn's home is approximately a quarter (1/4) of a mile away from Plaintiff's home. **Exhibit 8** at 4.

    11.    Unbeknownst to Plaintiff, Quinn already was familiar with the property as he knew the builders and had observed the home being built. *Id*.

    12.    In or about the mid 1990s, Quinn was asked to look at the house on behalf of a woman who had bought the house. **Exhibit 8** at 4-5. The owner wanted an estimate of the cost to repair damaged sheetrock. *Id*. at 5. Plaintiff believes Defendant was the woman and owner of the home at the time the request was made of Quinn.

    13.    When Quinn inspected the sheetrock, he noticed termite damage throughout the house with extensive infestation in some areas such as the closets. **Exhibit 8** at 6. He described the damage as being so severe that the interior of the home would have to be gutted and re-sheet rocked. *Id*.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 5

14. Quinn informed the owner of his findings and gave her an estimate of the costs to repair the damage to the home. *Id*.

15. The woman never contacted Quinn to perform the repairs to the home. *Id*.

16. Quinn never observed any repairs being done to the home nor any treatment for termite damage being performed at the home during the time between his initial estimate and his visit at the request of Plaintiff. **Exhibit 8** at 6-7.

17. When Quinn visited Plaintiff at the home, he noticed the same damage he had observed before with the previous owner and inquired as to whether she had gotten a good deal on the house given the termite damage. **Exhibit 8** at 7. Quinn testified during his deposition that Plaintiff was "shocked" by the question and his explanation of the extensive termite damage. *Id*. at 8.

18. Quinn later gave Plaintiff a verbal estimate of the cost of repairs based on the estimate he had given the previous owner. *Id*.

19. Plaintiff then tried to contact Defendant to discuss the termite damage, but was unable to locate her. **Exhibit 3** at 29-30.

20. Plaintiff immediately contacted an exterminator, Oliver's Exterminating, to discuss the termite damage and potential for remediation. The exterminator already was familiar with the property as the previous owner, whom Plaintiff believes to be Defendant,

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 6

had requested a termite inspection sometime in 1997. *See* **Exhibit 9**, Affidavit of Eldon Providence, at paras. 1-4.

21. The exterminator explained to Plaintiff that her home was infested with subterranean termites that were otherwise undiscoverable because the house had been freshly painted. **Exhibit 3** at 16. The exterminator further explained that the home was eaten away from inside the walls. *Id*.

22. The exterminator gave Plaintiff an estimate for the remediation work which Plaintiff accepted. **Exhibit 9** at para. 9. He advised Plaintiff that the termite remediation would take several visits over a six (6)-month period because the infestation was severe. *Id*. He explained that he would have to bore holes in the drywall throughout the house to get to the subterranean termites. *Id*.

24. The exterminator began the remediation work. **Exhibit 9** at para. 10. As a result of the work, the drywall in the home began to peel which made the home extremely dusty such that it began to exacerbate Plaintiff's asthma. **Exhibit 3** at 17.

25. Plaintiff had to be taken to the emergency room several times due to the dust and her asthma. *Id*.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 7

26. As a result of her asthma, Plaintiff was forced to stop the remediation work and temporarily move out of her home in June 2002. **Exhibit 9** at para. 11; *see also* **Exhibit 3** at 17.

27. Plaintiff first leased a home in Judith's Fancy from June 2002 to August 2002 for $2500 per month. **Exhibit 10**, Affirmation of K. Glenda Cameron.

28. She then leased a home in Estate Rattan from August 2002 to June 2003 for $1,950 per month. **Exhibit 11**, 1st Rattan lease. She later renewed the lease for the period of June 2003 until November 2005 for $1,500 per month. **Exhibit 12**, 2nd Rattan lease.

29. The exterminator's many attempts to remediate ultimately failed as they could not get to all of the termites. **Exhibit 3** at 16.

30. After speaking to several contractors, Plaintiff learned that her home would have to be gutted in order to remediate the termite damage. **Exhibit 3** at 17; *see also* **Exhibit 8** at 6 ("[B]ut there was damage throughout the house which would have entailed actually gutting the entire interior of the house . . . ").

31. In December 2003, Plaintiff retained Gerville Larsen, a Virgin Islands registered architect, to perform construction administration on the renovation of her home. *See* **Exhibit 13**, Affidavit of Gerville Larsen, at para. 4.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 8

32. At about the same time, the Plaintiff also retained Egbert Tonge, a maintenance contractor licensed to do business in the Virgin Islands, to refurbish and renovate her home. See **Exhibit 14**, Affidavit of Egbert Tonge, at paras. 2-4.

33. Plaintiff also retained Dion Lorenzo, a General Contractor licensed to do business in the Virgin Islands, to provide construction supervision during the renovation of the home. See **Exhibit 15**, Affidavit of Dion Lorenzo, at paras. 2-3.

34. Upon entering Plaintiff's home, Tonge noticed a tremendous amount of termite damage when he removed portions of the exterior and interior siding. **Exhibit 14** at para. 6.

35. Due to the severe termite infestation, Tonge had to remove all the interior walls at which time he observed termite damage to the existing wood stud frame, sheet rock, and all of the interior structure of the home. *Id*. at paras. 7-8. He further observed hollowed out studs, rotted beams, termite droppings, and old termite tracks. *Id*. at para. 9.

36. Tonge advised Plaintiff to get an exterminator to perform additional remedial work before beginning construction as there was too much damage to the existing structure to begin construction. **Exhibit 14** at para. 11. The Plaintiff again retained Oliver's

Exterminating to treat the property before she began renovation of her home. **Exhibit 9** at para. 11.

    37.    Due to the extensive termite damage, Tonge had to perform more work than initially anticipated when he began the renovation. **Exhibit 14** at para. 12. Tonge estimates he performed 75% more work on the old structure than he normally would have performed due to the extensive termite damage during 2003 and 2004. **Exhibit 14** at para. 13.

    38.    Tonge opines that the hidden termite damage could not have been revealed through a visual inspection or visual walk through of the home prior to the commencement of the construction work. *Id*. at para. 19.

    39.    Lorenzo also inspected the home to determine his scope of work. Upon doing so, he noticed substantial termite damage from the basement leading up to the second floor of the home. **Exhibit 15** at para. 4.

    40.    Lorenzo testified that the termite damage on the walls in the basement area could not be seen by an ordinary person doing a routine inspection to buy a house. **Exhibit 15** at para. 6.

    41.    The downstairs area of the home was so severely infested that Plaintiff lost

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 10

furniture and books that were stored there and could not use the area at all. **Exhibit 3** at p. 29.

42. The windows and doors showed evidence of termite damage and had to be replaced with metal aluminum and glass. **Exhibit 3** at 30-31.

43. Larsen opines that "a visual inspection or visual walk through prior to the commencement of the work could not have revealed the hidden termite damage." **Exhibit 13** at para. 12.

44. Plaintiff returned to the home in November 2005 after much of the reconstruction and new construction was completed. **Exhibit 3** at 26.

45. Adding together all the payments made relating to the remediation and reconstruction of the property, and supported by documentation, Plaintiff expended a total amount of $416,192.57.[2]

46. The total square footage of the original structure was 1,253 feet. *See*, **Exhibit**

---

2. The Court accepts the amounts enumerated by Plaintiff in para. 52 of her Proposed Findings of Fact and Conclusions of Law, except for items a, b, g, m, and lll. For line items a, b, and lll, the Court used the amounts as supported by proof of payment, *viz*. $14,000, $4,000, and $3,700, respectively; for item g, the Court used the amount $40,828.40 as contained in Invoice No. 02, Exhibit 20. The Court disallowed item m altogether as the Court finds that Plaintiff would have paid this home owners insurance amount regardless of the reconstruction.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 11

**"17"**, Appraisal dated July 4, 1997. The total square footage of the new structure is 3,126 feet. *See*, **Exhibit "18"**, Appraisal dated February 6, 2007. Therefore, the original structure accounts for 40% of the new structure.

**Conclusions of Law**

47. The parties' sales agreement forms the basis of this action.

48. Plaintiff timely filed her Complaint within two (2) years of learning of the termite infestation and Defendant's attempt to conceal it.

49. The Court finds that Defendant breached the sales agreement by failing to provide a proper wood inspection report and further breached the warranty regarding hidden defects as contained in the sales agreement.

50. The measure of damages for breach of contract is normally that amount which would put the plaintiff in the same position in which she would had been had the contract been performed. *Restatement (Second) of Contracts* § 347, comment a (1981).

51. As a result of Defendant's breach, Plaintiff is entitled to: "(a) the loss in the value to her caused by the Defendant's breach of the sales agreement; plus (b) any other loss, **including incidental or consequential loss**, caused by the breach, less (c) any cost or other loss the she has avoided." *Restatement (Second) of Contracts* § 347 (1981) (emphasis added). According to the Restatement, "incidental losses include costs incurred in a

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 12

reasonable effort . . . to avoid loss," while "[c]onsequential losses include such items as injury to person or property resulting from defective performance." *Id*. at comment c.

52. Plaintiff is entitled to both incidental and consequential losses, including costs incurred in remediating the termite infestation, costs incurred in renovating the home, costs for temporarily relocating to another home, and medical expenses incurred as a result of the exacerbation of her asthma.[3]

53. The Restatement (Second) of Contracts allows for a recovery of punitive damages where the "conduct constituting the breach is also a tort for which punitive damages are recoverable." *Restatement (Second) of Contracts* § 355 (1981).

54. Fraudulent misrepresentation is a tort in the Virgin Islands governed by the Restatement of Torts. *See Restatement (Second) of Contracts* § 355, cmt. b ("In some instances the breach of contract is also a tort . . . "); *see also* V.I. Code Ann. tit. 1, § 4 (1995).

55. Section 525 of the Restatement (Second) of Torts provides:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

*Restatement (Second) of Torts* § 525 (1977).

---

3. Plaintiff did not introduce any evidence regarding any medical expenses incurred as a result of the exacerbation of her asthma.


*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 13

56. Accordingly, Plaintiff must establish that: 1) the alleged misrepresentation was both fraudulent and material; 2) that the misrepresentation was made for the purpose of inducing her to buy the property; 3) that her reliance on the misrepresentation was justifiable; 4) that her reliance on the misrepresentation was a substantial factor in her purchase of the property; and 5) that she suffered damages. *See, e.g., Pourzal v. Marriott Int'l, Inc.*, Civ. No. 2001-140, 2006 U.S. Dist. LEXIS 60231 at *12 (D.V.I. August 17, 2006); *Harris v. Lombardi*, Civil No. 1263/1985, 1990 V.I. LEXIS 5 at *16 (Terr. Ct. March 8, 1990).

57. A misrepresentation is "an assertion that is not in accord with the facts." *Restatement (Second) of Contracts* § 159 (1981); *see also Restatement (Second) of Torts* § 525, comment b (1977). A misrepresentation is fraudulent if the maker intends his assertion to induce a party to manifest his assent and

> [t]he maker: (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies.

*Restatement (Second) of Torts* § 526 (1977); *see also Restatement (Second) of Contracts* § 162 (1981) ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so").

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 14

58. Concealment "is an affirmative act intended or known to be likely to keep another from learning of a fact of which he would otherwise have learned." *Restatement (Second) of Contracts* § 160, comment a (1981).; *see also Restatement (Second) of Torts* § 550 (1977) ("One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."). Concealment is "always equivalent to a misrepresentation and has any effect that a misrepresentation would have under" the relevant rules expressed in the Restatement (Second) of Contracts. *Restatement (Second) of Contracts* § 160, comment a (1981). Concealment is commonly applied in two situations, one of which is when "a party actively hides something from the other, as when the seller of a building paints over a defect. . . . In such a case his conduct has the same effect as an assertion that the defect does not exist, and it is therefore a misrepresentation." *Id*. at comment b.

59. Section 551 of the Restatement (Second) of Torts further provides:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 15

> under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
> > (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> > (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> > (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> > (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> > (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Restatement (Second) of Torts* § 551 (1977).

60. Defendant had a duty to disclose the extent of the termite damage and her failure to do so was both fraudulent and material as Defendant knew of the termite infestation from Quinn. Defendant's provision of a misleading wood inspection report and her repainting of the home shows that she intentionally and deliberately hid the termite infestation from Plaintiff.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 16

      61.     In addition, Section 532 of the Restatement (Second) of Torts provides:

> One who embodies a fraudulent misrepresentation in an article of commerce, a monument of title, a negotiable instrument or a similar commercial document, is subject to liability for pecuniary loss caused to another who deals with him or with a third person regarding the article or document in justifiable reliance upon the truth of the representation.

*Restatement (Second) of Torts* § 532 (1977). The "maker of a fraudulent misrepresentation in a document has reason to expect that it will reach and influence any person whom the document reaches." *Id*. at comment b.

      62.     As such, Defendant should have expected the misrepresentation contained in the wood inspection report to induce the Plaintiff to purchase the home. The Court therefore concludes that Defendant included the erroneous wood inspection report to induce the Plaintiff to buy the property.

      63.     "The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." *Restatement (Second) of Torts* § 540 (1977).

      64.     In this instance, a visible inspection would not have disclosed the termite damage as the walls had been painted prior to Plaintiff's purchase. As such, Plaintiff was justified in relying upon the Defendant's fraudulent misrepresentation.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 17

65. "The maker of a fraudulent misrepresentation is subject to pecuniary loss suffered by one who justifiably relies upon the truth of the matter represented, if his reliance is a substantial factor in determining the course of conduct that results in his loss." *Restatement (Second) of Torts* § 546 (1977).

66. The misrepresentation regarding the lack of termite damage was a substantial factor in the Plaintiff's decision to purchase the property.

67. A plaintiff claiming fraudulent misrepresentation has a choice of two remedies: "he may affirm the contract and maintain a tort action in deceit for money damages or he may seek restitution in quasi-contract." *Ingvoldstad v. Estate of Warren H. Young*, 19 V.I. 115, 121-22 (D.V.I. 1982) (citation omitted).

68. Plaintiff is entitled to recover as damages in this action of deceit against Defendant: "(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation." *Restatement (Second) of Torts* § 549(1) (1977). Damages include "the actual out-of-pocket loss." *Id*. at comment b.

*Cameron v. Miller*
2001-CV-0073
Findings of Fact and Conclusions of Law
Page 18

69.     The Court concludes that of the $416,192.57 expended by Plaintiff to remediate and reconstruct the property due to the termite infestation, Plaintiff is entitled to recover the sum of $231,595.15[4] in damages against Defendant.

70.     This amount represents 100% reimbursement for costs that Plaintiff would have incurred regardless of the extent of the reconstruction, for example, architectural and survey services,[5] and 40% reimbursement for costs such as labor and materials.[6]

71.     The Court further concludes that Plaintiff has not made an adequate showing of Defendant's net worth to support an assessment of punitive damages.

ENTER:

Dated: June 29, 2009                       /s/ George W. Cannon, Jr.
                                           GEORGE W. CANNON, JR.
                                           U.S. MAGISTRATE JUDGE

---

4. Plaintiff has acknowledged and presented evidence that the new structure is approximately 60% larger than the original structure. *See* paragraph numbered 46 *hereinabove*.

5. The specific items the Court determined to be 100% reimbursable are listed in paragraph 52 of Plaintiff's Proposed Findings of Fact and Conclusions of Las (Docket No. 74) as items a, d-l, n-p, dd, and ooo.

6. The specific items the Court determined to 40% reimbursable are listed in paragraph 52 of Plaintiff's Proposed Findings of Fact and Conclusions of Law (Docket No. 74) as items b-c, q-cc, and ee-nnn.